Okay, our one case this morning is number 21-1756, Erb v. Treasury. Good morning, Your Honors. In this case, the agency bears the burden of proving the charges against Mr. Erb and each element thereof, but instead what the agency has done and the MSPB affirmed was putting the burden on Mr. Erb to disprove those charges instead of carrying the burden itself. This case involves two charges, one of time card fraud with the 11 specifications underneath that and one charge of failure to follow supervisory instructions or failure to follow instructions. Okay, with respect to the time card fraud, as I understand it, in each specification there were two allegations of falsehood, one that he worked in person and the second that he worked a full tour of duty, correct? That's correct, Your Honor. And it seems to me in reviewing the records that you have a strong argument with respect to some of the specifications but less so with respect to others. For example, on the misstatement about the working in person, there are several specifications that there was detailed testimony about no recollection of a request to telework and also that the deciding official checked the time records and found no evidence that he had been approved for telework. So as to those specifications, and I think there might be two, three, four, maybe there are others, it doesn't seem as though there's substantial evidence to support the finding of falsity, correct? We would not, I would not be able to agree with that, Your Honor. We will acknowledge the evidence supports that with these specifications at issue, Mr. Erb recorded having worked a regular tour of duty when he should have recorded telework and so that would meet one element of the charge, that would be wrong information. However, what's not met is that he intended to mislead with his time entry or that he benefited from it personally, via personal gain, because the only way the agency could prove that element is to prove that he didn't work on those occasions. Now his supervisor for much of the time period here... So what you're saying is that you agree that the support for those specifications, that it was inaccurate to state that he had permission to telework, but that wasn't a material statement. That's not exactly what I'm trying to persuade you of, Your Honor. We acknowledge that on his web time and attendance records, it recorded in-office work, when in fact what he had been doing was telework, and he should have recorded it as telework on most of these dates at issue. So that he worked remotely rather than in the office, which is what his time record said was in-office work, that aspect of each of these specifications we acknowledge is not correct information that he entered. However, the record doesn't support a contention that he did that with an intention to deceive, but rather he testified that he didn't use telework very often, and it was a mistake that he recorded it as regular in-office work versus telework on these dates at issue. The large majority of them spanning from January to June 1st are... That would be a credibility determination by the board, right, as to whether the board accepted that testimony that he accidentally recorded his time as being in-office when he actually was teleworking. I think that's fair to say, however... That's hard for us to look behind, I suppose, is what my point is. I understand, but the credibility determination's in concert with the record evidence, and in addition, the MSPB stated that Mr. Erb was not credited on that because of the improbability of his explanation. And a lot of that in the MSPB decision is based on the January 22nd date, the first substantiated specification in this date. And we filed a request for the court to take judicial notice that on that date the federal government was on a shutdown. So Mr. Erb's... Neither party was aware of that circumstance while this was being litigated. The investigators from the Treasury Office of Inspector General did not overturn that piece of information. Okay, but your problem is this. As I understand the case law, the charge gets sustained if one of the specifications gets sustained. So you really have to show us that there was an error with respect to all of the specifications with respect to charge. Even if we find one specification to be supported by substantial evidence, that's sufficient, right? Well, it might be sufficient to support the charge, but not the removal action in this case because it would be so mitigated. And also, what has not been proven with respect to any of the charges is Mr. Erb's intent to deceive or intent to defraud the government by garnering a personal gain on any of these dates. Well, let's take June 28th and 29th where there's testimony that isn't plausible that he put in a full day. And there is no logging on to the web system on those days, unlike other days. So why isn't there substantial evidence to support the finding with respect to those two specifications that he didn't work a full tour of duty? Which would be a personal gain, right? If that had occurred, I'd be forced to acknowledge that it was. However, both supervisors at issue here, Mr. Crosby and Mr. Yaros, testified that Mr. Erb was able to perform work without logging on to the telework system. And Mr. Erb testified to that as well. He had two special projects, one regarding improving SCIF operations and the other involving improving Intel review operations and those Intel review process and those entailed reviewing... They testified to that, but they also testified that he did have work that he could do offline. He could work on his hard copy documents, he could work on his Samsung government device and respond to emails. In addition... But why isn't... I mean, the A.J. credited the testimony that if he didn't log into the system, it was implausible that he didn't work a full tour of duty, right? So, why isn't that substantial evidence? Because the testimony was not consistent. The testimony was... Mr. Crosby's testimony at the hearing is contradicted by his testimony during his deposition where he was forced to admit that yes, it's possible for Mr. Erb to do a substantial amount of work not logged on to the system. And in addition, the decision maker... You added this time the phrase substantial amount of work. Is that what he said in the deposition? He said that it's possible for him to do work offline. That's not quite the same thing. Well, he also... The plausibility determination turns on just how much work there is to be done offline. Right. And I will say this, that the agency in responding to discovery requests in the record, in the appendix, stated that it would not put a number on how much time could be spent on some of the offline work that Mr. Erb cited, such as reading flash reports and working on the special projects and reviewing open source resources. Yeah, but they also testified that it wasn't plausible that he could work full productivity without logging on to the system. But that is undermined by their acknowledgement that there was work that Mr. Erb could do while not logged on to the system. In addition, he had just received an outstanding performance rating. What's not present in this record is any evidence that his work suffered or that he missed a deadline or that he had any performance issues, which would be expected if he were gold-bricking on a regular basis and not working when he stated that he was. There was something in the record about a history of problems with his WebTA submissions. Is that right? There is something in the record that Mr. Crosby's testimony, who was Mr. Erb's supervisor until April 2018, stated that he counseled him on his WebTA. What Mr. Crosby did not say is that Mr. Erb had a history of recording that he worked when he didn't work. However, Crosby said that he had instructed Mr. Erb to correct his WebTA. Mr. Crosby also stated on Appendix 78 that he had emailed correspondence with Mr. Erb where he told him this, and that he'd given those emails to agency counsel. Yet those are not in the record, and Mr. Erb doesn't recall that ever occurring. That criticism doesn't appear in any performance review. It doesn't appear in any written document. There's absolutely no documented history of Mr. Erb having time and attendance problems. None of that transpired until the events of this case. I think it's important that I also highlight that Mr. Erb was abruptly removed from his position, effectively, in early July 2018. He had to relinquish his badge, his mobile device, his laptop, and was never again given access to his workspace. So he was not able to look through his systems to try to recreate his work days on the days at issue here in a sufficiently meaningful way. Yeah, but you don't raise as an error on appeal that he was denied discovery as to that information, right? That's true, but we did cite it, that Mr. Erb sought to compel that kind of information at the MSPB, but that was denied. And it's my understanding that normally will not be treated as reversible error, but it's in keeping with the theme of this case, which is that Mr. Erb is walked out in July 2018 abruptly, taken by surprise. He's just recently represented the agency overseas in Doha, Qatar. He's gotten an outstanding performance rating, and all of a sudden he's walked out and he's not allowed to look through his systems to try to recreate what exactly he did on all these dates ranging from January to June 2018, or July, excuse me. But nonetheless, he has been able to deduce significant evidence with respect to each of these dates to support his contention that he was working a full day. And he certainly did not intend to defraud the government of a day's work. He always delivered at the highest level on each of his days working for the agency. Do you want to save time for rebuttal here? Yes, thank you. Thank you. Good morning, Your Honors. May it please the Court. We respectfully request that the Court affirm the decision of the Board below. Okay, so it seems to me that with respect to charge one, there are a number of specifications here where it seems as though the finding of false statements and effort to defraud the government is based on pretty speculative testimony. Take, for example, the permission to telework question. And the Article is specifying as to some of the specifications that he couldn't recall that Mr. Erb had received permission to telework. And he keeps saying, well, this was a couple of years ago. I mean, how can that be substantial evidence that he didn't have permission to telework? Certainly, Your Honor. To clarify, you had asked before about are there two allegations underneath each specification. And I disagreed slightly with Your Honor's characterization. I think it's important in answering your question. It's not that for each specification the allegation is he did no work whatsoever or that he teleworked without permission. The allegation for each one is that he did not do what he certified. For ten of those, it was in office. And one, it was that it was telework. And then it was that he did not do a full tour of duty. But the theory is that if he had permission to telework, then it wasn't material that he falsely entered on his timesheets or inaccurately entered on his timesheets that he worked in person. So that's how it becomes important as to whether he had permission to telework or not. And as to some of these specifications, there's a finding of no permission to telework, which it seems to me is based on nothing but speculation by Eros, that he can't recall two years later that he had permission to telework. That really is difficult for me to see how that's substantial evidence. I understand, Your Honor. For some of the specifications, I think the evidence is very clear that telework was not authorized. I believe that there's some, but there are many where it's not. Your Honor, I respectfully disagree with the idea that that applies to many, but I do agree it applies to a couple. For example, with regards to Specification 7 and with regards to – one moment. So with respect to Specification 7, Your Honor, I agree. The specifications that Mr. Eros was his supervisor for is Specification 6 through 11. Okay, so what you're saying is in some respects, these are decisions that are supported by substantial evidence. Well, I disagree with that statement, Your Honor, but I do agree that for a couple of them, there is not a specific finding or there's not evidence that it was not – there's not clear evidence that telework was not approved for that particular day. Let's take the other issue about a full tour of duty. As to some of these, there's evidence that he logged in repeatedly to the system, and there's also evidence that the system didn't recall log-offs. So how can it be in those situations where he logged into the system half a dozen times throughout the day that there's evidence to support the notion that he didn't work a full tour of duty? Your Honor, the counsel argued in the papers the significance of the lack of the – No, answer my question. How is it with respect to those specifications where there's repeated logging on to the system and the system doesn't tell you when he logged off that he didn't work a full tour of duty? What's the evidence? Your Honor, the administrative judge looked at the log-ins but also looked at the email traffic as well as the testimony. And below, Mr. Erb's story wasn't that he was actually in the system for an extended period of time. His story was rather that he worked outside of the system. Well, there is such testimony as to some of these things, but there's some specifications where he logged into the system repeatedly throughout the day. Where is the substantial evidence that on those days he didn't work a full tour of duty? Your Honor, it depends on which specification we're speaking about, but for the ones where there's multiple log-ins, it's also the lack of email traffic and the specific testimony from the supervisors. There's also email traffic on those days. Your Honor, there are emails, but it is minimal. I just don't understand your position. Certainly, Your Honor. Half a dozen log-ins, emails, phone calls. Where's the evidence that he didn't work a full tour of duty? Your Honor, for most of these specifications, it is not that there are only a couple of log-ins. And for the emails, there's also it's only a couple in there. What the administrative judge found is that they were short. They tended to be not about substantive work, jokes, or about a job he was applying for, and so the nature of the emails. Your Honor, you're not being specification-specific. Yes, there are some specifications where there's plausible finding that he didn't work a full tour of duty, but there are others where he didn't. So let's assume for the moment that we find that some of these specifications should not have been sustained, that there was no substantial evidence. Where do we go? As I understand it from the cases, we can sustain the charge even if one specification is sustained, right? Yes, Your Honor. Okay, but how does that affect the penalty? That's the problem, because if there's only one specification sustained and charge two is sustained, let's say hypothetically, doesn't that affect the penalty? Well, Your Honor, it's my understanding of the case law that the penalty is really tied to the charge, but I also think it's significant here that the administrative judge found credible that this was a repeated pattern of behavior even outside of the specifications. And so even if Your Honor's only sustained certain specifications, it's not the case that these are then isolated instances. What the administrative judge found is that this was actually a repeated pattern of behavior, which I think is significant. So it is my understanding, Your Honor, that under the case law that if both charges are sustained, that the penalty, it still goes to whether it is disproportionate to the offense, such that it is outside the bounds of reasonableness, and we would submit that it is a reasonable penalty even in that circumstance, Your Honor. LeChan says that if you sustain some but not all charges, there's an issue about the penalty. I didn't see cases that dealt with the situation where you sustained some of the specifications sufficient to sustain the charge but not all. Are you aware of any cases? No, Your Honor. When I looked at this in preparing for this argument, Your Honor, what I found is that the court can sustain a charge based on even just one specification, and that as long as the charges were sustained, the penalty is based on the charges rather than the number of specifications that are sustained. So I'm not aware of a case, Your Honor, that ties the penalty to specifications rather than to the charge itself. But if this is something Your Honor would like more information about, we can certainly submit something after argument that delves into this further because it's not fleshed out in the parties' briefs. To what extent there was a dispute below about the telework logging on, whether it was one time or as many as four times during a given day? To what extent was there a dispute about whether those single or multiple log-ons represented enough of the full day that we should consider the person as having been logged on the full day? Certainly, Your Honor. The way the record developed below was not about how long Mr. Erb was in the system. He appeared to concede that the few log-ins represented minimal time in the system. He didn't concede that? He didn't concede that, Your Honor. I'm saying his explanation wasn't that he was in the system for an extended period of time. His explanation was he was working outside of the system, and that is what the administrative judge found not credible. So my point was that this was not explicitly addressed in the hearing, Your Honor, exactly whether he was in the system for entire days. We do not know exactly when he logged out, but the issue below was rather did with minimal time in the system, was there evidence that he was teleworking a full day? And Mr. Erb explained that he was working from his phone and working on projects outside of the system, and the administrative judge found that not credible and instead credited the testimony of his supervisors that said that, you know, you can perform some tasks outside of the system, but really to perform substantial work, you really need to be in the system. Is there evidence about whether besides logging in and logging off, there was an electronic means of checking or identifying numbers of communications with numbers of uses of the system, communications to databases or that sort of thing? No, Your Honor, that was not in the record. We have the logins, we have email communications, but there was not evidence about other time in the system. It's my understanding that it's because like many government systems, the computer locks if you're not actively using it, and so the way the testimony unfolded, everyone seemed to proceed with the understanding that you would expect to have many logins throughout the day, which is why when Mr. Erb addressed that, he said— Where is that testimony? I'm sorry, Your Honor? Where is that testimony?  This is my point, Your Honor, is I'm saying that everyone appeared in the hearing to be testifying. No one specifically— Appeared to have a cluster testimony that you would expect multiple logins because— No, Your Honor. No, there's not. It is not explicitly addressed. On this record, if he logged in at 8 o'clock in the morning, he was working on the system all day long, right? Your Honor, it is correct that we do not have a specific logout time. However, I do not agree that that means that Mr. Erb was in the system all day long, nor was that his explanation. Both at the hearing, but also if you look at his response to the notice of proposed removal, he explains that he was working on his phone or on his outside projects. He wasn't alleging that he logged in at 8 a.m. and then continued working all day long and it never locked, and that's why there's only one login. So my point is that this was not explicitly addressed, Your Honor. So that testimony about how many logins he would have explicitly or with the logout times is not—was not specifically addressed. Well, give us an example of his response to the specification where he says, I was working full time, 12 o'clock. Certainly, Your Honor. I know that exists with respect to June 28th and 29th, but I'm not sure about the other days. Certainly. Okay. As a brief example, Your Honor, on Appendix 137, which is the response to the notice of proposed removal, I just happen to flip to that first. Mr. Erb's explanation was that the telework software that FinCEN uses— I'm sorry, what page are you on? 137. Okay. And this follows Mr. Erb's explanation about working on projects. This is legal argument. Where does he say in his testimony that he admits that he didn't log in, didn't work online, but justifies his full tour of duty by reference to offline activity?  I'm looking at Specification Number 3 in this 139, Appendix 139. It says he worked the full day, received verbal permission to telework, logged into the system three times. I'm sorry, what page are you on, Your Honor? 139. It says he was kicked off the system. Yes. So for Specification 3, he says he was kicked off of the system. He was likely kicked off of the system and continued working, and then he references the emails. And the court looked at those emails and found that the emails generally were not substantive and were minimal and generally did not reflect substantive work. Mr. Erb says, with regard to Specification 4, that he accessed the system in between meetings— or, I'm sorry, around 4 after his interview, and he talks about the emails. And then he also says that he was working on these special projects. And that's what I mean, Your Honor, about saying that he generally is pointing to his work from his phone and or the special projects that are outside the system. Okay, but take as an example the specifications, I don't know whether it's this one or not, where he had two meetings. Yes, Your Honor. He was talking to a person and he teleworked in between the two meetings. Yes, Your Honor. And he logged into the system in between the two meetings. Yes, Your Honor. Specification 8 is where there is, I agree, the most nuanced of the specifications. Is that the word for weakest? No, well, Your Honor, I'll say that there is the most evidence here for Mr. Erb doing work. And this is what I wanted to clarify from where you were starting with, Ms. Watson, before, is that it's not that he— the administrative judge found that he did no work every day. It's that the administrative judge found that for each specification, his certification, what he certified was incorrect and that he did not work a full tour of duty. Okay, but take specification 8. How is there substantial evidence that he didn't work the whole day? Two long meetings and he logged into the system in between. What's the evidence? So, Your Honor, it is— there was a 20-minute meeting at Treasury and then Mr. Erb claimed that he attended a panel from 1 to 4 and that he accessed the system. The administrative judge looked at that evidence and concluded that he did not work a full tour of duty, but I agree that that one is where there is the most evidence of Mr. Erb performing work. In contrast to, for example, specification number 7, where Mr. Erb logged in once at 8.13 in the morning and sent one email that was four sentences long. And so, I think it's— we have to go really specification by specification, Your Honor. So, for example— Do you agree that some of the specifications were supported by substantial evidence? No, Your Honor. I do not agree that the specifications were not supported by substantial evidence. However, when Your Honor asked me, do I agree that there is evidence that Mr. Erb worked, did perform work on certain of the days, I would agree with that statement, Your Honor. But again, because the specification was— But the burden is not on him to show he worked a full day. It's the burden is on the government to show he didn't. And on these days where he logged in repeatedly and also sent emails, and on that day from specification 8 where he had the meetings, it seems quite special that he's saying he didn't work a full day. Your Honor, I understand— I take your point with regards to specification 8. And I would just say that it's not the agency's burden to provide the precise amount of time that he was logged into the system every day or the precise amount of time he was exactly working. The burden was to show that he falsified his time reports, which is what they did. He certified 10 false time cards, nine of which said that he was working a full day of regular in-office time, but he never entered the facility. For many of those, he claimed he was teleworking, but there was minimal evidence to support that he did minimal of any work. And then for one of the days, for specification 11, I did just want to clarify something that was said before. On that one, he certified a timesheet saying he teleworked a full tour of duty. So I think there was a reference before about all of them saying that he was in the office, and that's not quite right. Specification 11 is that he certified that he worked a full tour of teleworking, but he agrees he was not working that day. He was actually on leave. So, for example, for specification 11, it was conceded he was actually on leave that day and instead certified a full... Sick leave? No, for that one, it was annual leave, Your Honor. In specifications 9 and 10, where he certified that he worked five hours in the office and four hours of sick leave, but in reality, he says that he teleworked those days and he did not log into the system, and I believe there's only one email over the two days, and then he did not attend... How common was telework in this office during this time? I mean, nowadays, obviously, telework, people are teleworking one, two, three, four days a week. What about in this office in this year? Your Honor, there's not evidence about the exact amount of time that people were teleworking, but it appears there was a flexible telework policy at the time. There is testimony that the employees just had to request approval from their supervisors in advance, and the supervisor had to approve their ability to telework, and then if that was not possible, they could have a verbal approval that had to be followed up in writing. So the evidence is that individuals, including Mr. Erb, did have permission to telework with their supervisor's approval, but I do not have... There's not evidence in the record regarding exactly how frequently it occurred. I believe Mr. Erb testified that he generally teleworked about how frequently he did over a period of time, but I don't have a statistic about how common it was to him, but it was... Yes, Your Honor, so his father had died in 2015, and so Mr. Crosby agreed that he had allowed Mr. Erb some flexibility. Normally you're required to telework from your home if you get permission to telework, but he had allowed Mr. Erb at times to telework from Pennsylvania, but Mr. Crosby testified that Mr. Erb still had to request permission to telework in advance and in writing, that he was not excused from that requirement. The flexibility was that he was permitted at times to telework from Pennsylvania instead of from Virginia, and he still had to certify his time card correctly. Can I ask you this question? So for some of the specifications where there's some evidence of logging in and maybe a few e-mails, did the relevant supervisor or anybody for the government explain why in that circumstance it sure looked like there wasn't work throughout the day? Because, for example, ordinarily you would see the following kind of activity. There was none of that. Something that fills in, that provides a basis for an inference  the logins, e-mails, a supervisor saying, that really is not what we would expect to see from a full day's work. Something on that. Your Honor, that was not asked of the supervisors at the hearing, so that specific testimony you're looking for is not in the transcript. Instead, what was being asked of the supervisors is, could he do substantial work or a full day's work from his phone or outside of the system? So that was the series of questions that was put to his supervisors. There was not explicit testimony about why it is the minimal number of logins represented minimal time in the system. Because instead, again, the focus was on whether one could work outside of the system. So let's take specification three as just an example. He logged into the system four times in the morning and the afternoon. And he sent six emails. So what's the evidence there that he didn't work the full day? Your Honor, the administrative judge considered that and found that those emails showed some activity, but because the email traffic was non-substantive, But it shows he was working. Yes, Your Honor. And he logged into the system four times. He may have been on the system for virtually an entire day. Your Honor, respectfully, I appreciate your point. We do not know exactly when he logged off. What the administrative judge found instead was that he could not... The premise... Unfortunately, I do not have... There is not testimony that you're looking for. People do not explain why it is, exactly how many instances you would expect someone to log in. But I will say the number of logins that you see, 808-843-924, shows that you would expect someone to be logging in if you're actually at your computer. Yes, Your Honor. My point is that the three that are close together, it is my understanding that's generally what you're expecting to see, but that is not... It was just not addressed at the hearing, Your Honor. Like I said, instead, what was developed was whether one could work outside the system, and that's where Mr. Yaros and Mr. Cosby testified that to justify a full day of work, you have to be logged into the network. Although you perform certain tasks outside of it, substantive work... He was logged into the system. Respectfully, Your Honor, he did log into the system, but what the administrative judge found was that he was... that reflected minimal time in the system, those logins. It is not... What happened in Specification 6, where he was telling some co-workers he was teleworking... Yes, Your Honor. ...because he was sick, but then was on an email chain with multiple employees, but then when the conversation turned to him saying he was sick, he removed his supervisors from the email chain. What's that all about? Yes, Your Honor. So... Your Honor, I'm afraid I don't quite understand what... I guess what I'm trying to figure out is why are we supposed to take some relevance from the fact that the AHA said that in this email chain, he removed his supervisors from the email chain when he started talking about how he was sick and would be working from home. Yes, Your Honor. So that's on Appendix Page 17, and this is in response to Mr. Ebb's general claim that he had authorization on these days to telework. So for this particular specification, the administrative judge found that he had not made a specific claim of being authorized on this day, and then it's noteworthy that the email chain where he was telling his colleagues he removed his supervisor. I believe the inference therefore being that he specifically did not get permission from his supervisor or even notify his supervisor that day because he removed his supervisor from the email chain. So it's to rebut the idea that on that particular day he had authority to telework. That's it, Your Honor. Okay. We'll defer the questions until we run out of time. Thank you. Thank you, Your Honor. Ms. Watson. Your Honors, if I may briefly, with respect to Specification 6, which you were just discussing, the email is referenced in that, I believe here at 186 in the appendix, and Mr. Ebb was corresponding with Ann Martin on that because Ann was the one who was talking about because if you look at the previous emails, they were corresponding about a meeting that the two of them were meant to attend, not his supervisor. So that would be the very reasonable explanation for why he corresponded with the person that he did, who was his second-line supervisor. I'd also like to highlight that the decision-maker, Mr. El-Hindi, testified repeatedly that he did not know how much Mr. Ebb worked on any of the specific dates at issue here, and the agency has acknowledged that the allegation isn't that he didn't work, but they don't know how much he worked. And again, we would say that that is putting the burden on him yet again. I'd also like to cite a decision from this court, Tartaglia v. Department of Veterans Affairs, which the MSPB cited. And in that case, there were two charges against the appellant. One was overturned, one was sustained, but a subset of the specifications of that charge were sustained. And ultimately, one specification was sustained that he had abused his authority by having a subordinate drive him in a government vehicle for a personal errand. This court determined that removal should be vacated in that case. I'd also direct attention to the case of Rigliano v. USPS from the MSPB from 1988. That case got remanded to determine if the appellant had known that his spouse had forged a doctor's note for him. So I bring these up to suggest that, you know, certainly our position is that vacating the penalty is appropriate, but also remanding for determination of what's appropriate, I would suggest, is an option in this case. Can I just clarify? Yeah. So vacating the Board's decision goes only so far as to send the matter back to the Board. For the Board to determine whether, in the absence of any particular specifications that we might find insufficiently proved, the removal remedy should be upheld. That's not a vacating of the removal for a new decision by the deciding official. Not the deciding official, and I probably didn't communicate it well, but I was suggesting that the removal action should be vacated and it could be appropriate to remand to the MSPB to determine the appropriate penalty under the circumstances if it's determined that not all of the specifications are upheld. And there's some legal standards governing how the Board decides that, right? Within the bounds of reasonableness is my understanding of the standard there. I mentioned the Tartaglia case because that is one in which this Board determined that removal was inappropriate, and that was reversed because not all the specifications were sustained, and the one that was was not serious enough to warrant removal in that case. Specifications or charges? In this case, specifications.  Only one charge was sustained and only two... By the Board? Right, right. So as the case came here... But the Board... I don't mean to speak over you. I apologize. No, no, I'm just trying to understand. Yes, the Board sustained a subset of the specifications but also sustained the removal, and this Court found that that was not reasonable. The removal was not a reasonable penalty given those circumstances. And we would... The facts are certainly not identical, but we would say the analysis is similar, that if this Court determines that these specifications are not all sustainable, that the removal action should not be as well. And in this regard, I would like to cite to appendix page 465, which is the agency's table of penalties for these charges. And if I... The range of penalties... I'm sorry, what page? It's page 465 in the appendix. I don't have that 465 in my appendix. Understood. Well, it's not part of the appendix that was cited in the brief. But it's in the record, and I'll represent to you that the range of penalties according to the agency for time card fraud, which is falsification of a government record, ranges from written remand to removal. So that's, I would say, essentially the full range of penalties, but depending on how egregious the violation is. And if I may briefly... It doesn't attempt to quantify it. It doesn't attempt to quantify it? Yeah. The range is articulated as written remand to removal. It doesn't say, you know, three instances of misstatement usually brings about a 14-day suspension. I will... That is a good point of clarification. What I've cited is for a first offense. For a second offense, the agency cites 30-day suspension to removal. Okay. And for a third offense, removal. If I can briefly address charge 2. I think we must move on to some further questions. We're out of time. Okay. Thank you. Okay, thank you.